Present: All the Justices

WALTER MICKENS, JR.

OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.

v. Record No. 961216

November 1, 1996

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Verbena M. Askew, Judge

In this appeal, we review a judgment sentencing Walter Mickens, Jr., to death following a second sentencing hearing.

I

Mickens was convicted of the capital murder of Timothy Jason Hall, i.e., the willful, deliberate, and premeditated killing of Hall in the commission of, or subsequent to, attempted forcible sodomy, in violation of Code § 18.2-31(5), and sentenced to death. We affirmed the conviction and death sentence. Mickens v. Commonwealth, 247 Va. 395, 442 S.E.2d 678 (1994) (Mickens I). The Supreme Court of the United States, however, vacated the judgment and remanded the case to this Court for reconsideration in light of Simmons v. South Carolina, 512 U.S. 154 (1994). Mickens v. Virginia, 513 U.S. ___, 115 S.Ct. 307 (1994). Upon remand, we concluded that the holding in Simmons required a remand of the case to the trial court for a new sentencing hearing. Mickens v. Commonwealth, 249 Va. 423, 457 S.E.2d 9 (1995) (Mickens II).[1]

On February 5-8, 1996, the trial court conducted the new

---

[1]In Mickens II, we ruled that the jury was entitled to be informed of Mickens' parole ineligibility. 249 Va. at 425, 457 S.E.2d at 10. To this end, the trial court, upon remand, instructed the jury that "imprisonment for life" meant life imprisonment "without possibility of parole."

sentencing hearing, and, after hearing evidence in aggravation and in mitigation, the jury fixed Mickens' punishment at death, based upon both the "vileness" and the "future dangerousness" predicates.  Code § 19.2-264.2.  After considering a probation officer's report and additional evidence presented during a post-sentencing hearing, the trial court sentenced Mickens in accordance with the jury's verdict.

In this appeal of right, we review Mickens' death sentence and consider Mickens' assignments of error to various rulings by the trial court during the new sentencing hearing.  Code § 17-110.1.

II

A

A full statement of the facts surrounding the crime is set forth in Mickens I, 247 Va. at 398-401, 442 S.E.2d at 681-83.  At the new sentencing hearing, however, evidence of the crime was limited to the testimony of two witnesses, an Identification Technician with the Crime Scene Search Unit of the Newport News Police Department and an Assistant Chief Medical Examiner for the Commonwealth.

In the early afternoon of March 30, 1992, the police technician was dispatched to the crime scene on the shoreline of the James River, near 29th Street, in the City of Newport News. There she saw the body of the victim, later identified as Timothy Jason Hall.  The body was nude from the waist down, except for

white athletic socks, and the victim's legs were spread apart approximately 12 inches.  Pubic hairs were recovered from the victim's buttocks.  Bloody "transfer" stains were apparent on the outsides of the victim's thighs, and a "whitish" fluid was evident around the victim's anus and on his inner thighs.[2]

An autopsy on the victim's body, performed by the medical examiner, revealed 143 separate "sharp force injuries."  Of these, 62 were paired stab wounds which were present over the victim's head, neck, back, and shoulders.  There also were 13 single stab wounds and three paired incised wounds.  The medical examiner concluded that the victim had bled to death and that 25 of the 143 wounds were fatal.  The fatal wounds included a stab wound to the right neck that severed the carotid artery and the jugular vein, four paired stab wounds that punctured the right lung, three stab wounds that punctured the left lung, seven stab wounds to the skull that penetrated the brain, a stab wound to the forehead that also penetrated the brain, and one pair of stab wounds that perforated the liver.  The medical examiner opined that the fatal wounds may not have caused instant death, and she estimated that the victim could have survived for as long as 30 to 40 minutes after the last wound had been inflicted.

B

In the new sentencing hearing, as in the first trial, the

_____

[2]Bloody "transfer" stains occur when a bloody object comes into contact with a surface, thereby leaving a stain on the surface.

Commonwealth proved that Mickens had been convicted of six prior felonies, which are summarized as follows:

| Date | Offense | Punishment |
|------|---------|------------|
| March 16, 1973 | Attempted larceny from the person | 3 years' imprisonment |
| June 3, 1974 | Sodomy | 3 years' imprisonment |
| June 3, 1974 | Robbery | 6 years' imprisonment |
| June 3, 1974 | Grand larceny from the person | 4 years' imprisonment |
| February 4, 1980 | Sodomy | 10 years' imprisonment |
| February 4, 1980 | Robbery | 7 years' imprisonment |

The evidence also established that Mickens had been paroled from prison three times. His initial parole on October 30, 1973, was revoked on August 16, 1974, because he had been convicted of robbery, grand larceny from the person, and sodomy. Mickens' second parole on July 1, 1979, was revoked on April 11, 1980, because he had been convicted of sodomy and robbery. His third parole commenced on December 19, 1991, and he was on parole when Hall was murdered.

Charles Edward Siron, one of Mickens' sodomy victims, testified that, on February 14, 1974, when he was 18 years old, he and Mickens were incarcerated in the Newport News City Jail. While Siron was sleeping, Mickens put a razor blade to Siron's throat and forced him out of bed and into the shower area where

- 4 -

Mickens attempted to sodomize him.

Ruby Bunn, one of Mickens' robbery victims, testified that, on February 7, 1974, she was teaching her second grade class at Erwin School in the City of Newport News. Mickens appeared at the classroom door holding a knife and demanding her pocketbook. Bunn went to get her money from her purse, and, when she looked up, she saw Mickens standing near a small boy and holding the knife a few inches from the boy's head. Bunn gave Mickens her money, and he left the classroom.

Mickens called three witnesses, Darius L. Robinson, Jacquelyn Carter Brown, and his mother, Catherine Mickens. Robinson, a correctional officer who supervises Mickens in prison, testified that Mickens does his assigned chores "very well." Also, Mickens participates in a Literacy Incentive Program that teaches inmates mathematics, spelling, and reading. Robinson stated that Mickens has not been a problem to him while in prison and that he has no "personal apprehension" of Mickens. Robinson further stated that, if Mickens were given a life sentence, he first would be "housed in an area of people of the same type of conviction," and, if he "progresses," he probably would be placed in a "less secure area," with nonviolent offenders.

Brown, a counselor with the Department of Corrections, talks to prisoners "about family situations, personal problems, [and] things of that nature." She has provided counseling services to

Mickens and has found him to be receptive to her counseling.

Mickens' mother testified that Mickens has two siblings and that the three children lived with her during their "developmental years." The children's father was not at home and did not provide assistance, and Mrs. Mickens worked and supported the family with the help of her grandfather. Mrs. Mickens testified that her son began to get into trouble when he was about 12 or 13 years old. During that time, she said, the "court system" did not provide any help for Mickens or services to assist her. She expressed hope that the jury would give her son a life sentence.

### III

In this appeal, Mickens revisits many claims that he asserted, and we rejected, in Mickens I. After reconsidering those claims, we adhere to our previous decisions and, therefore, reject the following claims:

### A

The death penalty is unconstitutional per se in that it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Federal Constitution, and the use of electrocution to carry out a death penalty also violates the Eighth Amendment. Both claims were rejected in Mickens I, 247 Va. at 402, 442 S.E.2d at 683.[3]

---

[3]On appeal, Mickens also challenges the use of lethal injection, the alternate method of execution provided for in Code § 53.1-233, contending that it too is cruel and unusual punishment. This claim was not made in the trial court, and,

- 6 -

B

The aggravating factors set forth in Code § 19.2-264.4(C) as predicates for the imposition of the death penalty are unconstitutionally vague and unreliable. This claim was rejected in <u>Mickens I</u>. <u>Id</u>. at 402-03, 442 S.E.2d at 684.

C

Virginia's death penalty statutes are unconstitutional because they do not require a jury to find that aggravating circumstances "outweigh" mitigating circumstances and because they do not require jury instructions defining mitigating evidence, specifying the burden of proof for such evidence, and specifying how jurors must consider such evidence. This claim was rejected in <u>Mickens I</u>. <u>Id</u>. at 403-04, 442 S.E.2d at 684.[4]

D

Virginia fails to provide meaningful appellate review of death penalty cases. This claim was rejected in <u>Mickens I</u>. <u>Id</u>. at 405, 442 S.E.2d at 685.

E

An accused in a capital case is entitled to additional peremptory jury strikes. This claim was rejected in <u>Mickens I</u>. <u>Id</u>. at 404, 442 S.E.2d at 685.
(..continued)
therefore, we will not consider it for the first time on appeal. Rule 5:25.

[4]On appeal, Mickens also challenges the trial court's giving of Instructions 1 and 3, which governed the jury's consideration of aggravating and mitigating circumstances. We reject this contention, finding that the jury was properly instructed.

- 7 -

F

The trial court erred in admitting into evidence five photographs of the victim's body. This claim was rejected in Mickens I. Id. at 407–08, 442 S.E.2d at 687.

IV

Mickens contends that the trial court erred in refusing to remove prospective juror Frank Johnson for cause. We do not agree.

During the jury voir dire, the prospective jurors were examined individually. The trial court excluded prospective juror Robin Johnson, who is Frank Johnson's sister, because she told the court that one of her brothers had been murdered and that she would be unable to be impartial in judging Mickens. She stated that she would be more prone to vote for the death penalty than for life imprisonment.

The next prospective juror to be examined was Frank Johnson. After a thorough examination, he unequivocally stated that his brother's murder would not influence his decision as a juror or prevent him from judging Mickens impartially.

The trial court retained Frank Johnson as a juror. The court observed that he "was emphatic about [his] being able to be impartial" and that it had no reason to believe otherwise.

An appellate court must give deference to a trial court's decision whether to exclude or retain a prospective juror because the trial court "`sees and hears the juror;'" therefore, a trial

- 8 -

court's decision in the matter will not be disturbed on appeal absent a showing of manifest error. Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990), cert. denied, 502 U.S. 824 (1991) (quoting Wainwright v. Witt, 469 U.S. 412, 426 (1985)). Accord Sheppard v. Commonwealth, 250 Va. 379, 386-87, 464 S.E.2d 131, 136 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1332 (1996); Stockton v. Commonwealth, 241 Va. 192, 200, 402 S.E.2d 196, 200, cert. denied, 502 U.S. 902 (1991). Additionally, there is no rule of automatic exclusion of a prospective juror simply because a family member was the victim of a violent crime. Stockton, 241 Va. at 200, 402 S.E.2d at 200; Mackall v. Commonwealth, 236 Va. 240, 252, 372 S.E.2d 759, 767 (1988), cert. denied, 492 U.S. 925 (1989).

In the present case, it is clear from Frank Johnson's answers that his brother's murder would not have prevented him from judging Mickens impartially or made him more inclined to impose the death penalty. Thus, giving the trial court the deference it is due, the record fully supports the trial court's ruling, and we cannot say that the ruling constituted manifest error.

V

Mickens contends that the trial court erred in denying his motion for a bill of particulars, seeking the Commonwealth's identification of all the evidence "on which it intends to rely in support of the aggravating factors . . . and its contention

that the death penalty is the appropriate punishment."[5]  We reject this contention.

An accused is not entitled to a bill of particulars as a matter of right.  Code § 19.2-230.  Whether to require the Commonwealth to file a bill of particulars is a matter that rests within the sound discretion of the trial court.  Goins v. Commonwealth, 251 Va. 442, 454, 470 S.E.2d 114, 123 (1996).  It is not the proper function of a bill of particulars to require the Commonwealth to identify all the evidence it intends to produce in the penalty phase of a capital murder trial.  Quesinberry v. Commonwealth, 241 Va. 364, 372, 402 S.E.2d 218, 223, cert. denied, 502 U.S. 834 (1991).

In the present case, the record shows that Mickens had full knowledge of all evidence to be used against him.  The Commonwealth's Attorney advised the court and Mickens that "the evidence . . . will be substantially the same as the evidence . . . produced [in the first trial]," and, except in one particular of which Mickens was advised, the evidence was the same.  Clearly, therefore, the trial court did not abuse its discretion in denying Mickens' motion for a bill of particulars.

VI

Code § 17-110.1(C) requires us to review Mickens' death

---

[5]The Commonwealth did not intend to introduce any unadjudicated criminal conduct by Mickens.  Therefore, Code § 19.2-264.3:2, which requires notice of such intention and a description of such conduct, was not applicable.

sentence on the record to determine whether the sentence (1) was imposed under the influence of passion, prejudice, or any other arbitrary factor; or (2) is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.  We conduct this review even though Mickens has not claimed that his death sentence was the product of any arbitrary factor or that it is excessive or disproportionate.

From our independent review of the record, we have found nothing to suggest that the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

In making the proportionality review, we must determine whether other sentencing bodies in this jurisdiction generally impose a death sentence for similar or comparable crimes, considering both the defendant and his crime.  Goins, 251 Va. at 469, 470 S.E.2d at 131–32.  In Mickens I, we concluded that Mickens' death sentence was not excessive or disproportionate to penalties generally imposed by other sentencing bodies in the Commonwealth.  247 Va. at 412, 442 S.E.2d at 689.  In discharging the same duty here, we have compiled and examined the records of all capital murder cases reviewed by this Court since Mickens I, Code § 17–110.1(E), giving particular attention to the cases in which the death sentence was based upon both the "vileness" and the "future dangerousness" predicates.  From this review, we conclude that Mickens' death sentence is neither excessive nor disproportionate to penalties generally imposed by other

sentencing bodies in the Commonwealth for similar and comparable crimes.  See, e.g., Barnabei v. Commonwealth, 252 Va. 161, 179, ___ S.E.2d. ___, ___ (1996); Goins, 251 Va. at 469-70, 470 S.E.2d at 132; Sheppard, 250 Va. at 395, 464 S.E.2d at 141; Breard v. Commonwealth, 248 Va. 68, 89, 445 S.E.2d 670, 682, cert. denied, ___ U.S. ___, 115 S.Ct. 442 (1994).

                              VII

     Accordingly, we conclude that there is no reversible error in the trial court's judgment and that the sentence of death should be affirmed.  Consequently, we will affirm the judgment.

                                        Affirmed.