Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Lemons, JJ., and Compton, S.J.

MICHAEL W. LENZ

OPINION BY JUSTICE LEROY R. HASSELL, SR.
v. Record No. 002779         April 20, 2001

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

In this appeal, we review the capital murder conviction
and sentence of death imposed upon Michael William Lenz.

I. Proceedings

The defendant was tried before a jury on an indictment
charging him with the capital murder of Brent H. Parker in
violation of Code § 18.2-31(3), "[t]he willful, deliberate,
and premeditated killing of any person by a prisoner confined
in a state or local correctional facility." At the time of
Parker's death, the defendant and Parker were inmates at the
Augusta Correctional Center. The jury found the defendant
guilty of capital murder.

In the penalty phase of the capital murder trial, the
jury fixed the defendant's punishment at death, finding that
he represented a continuing serious threat to society and that
his conduct in committing the offense was outrageously or
wantonly vile, horrible, or inhuman in that it involved
torture, depravity of mind, or aggravated battery to the
victim. See Code § 19.2-264.2. After considering a report

prepared by a probation officer pursuant to Code § 19.2-264.5, the circuit court sentenced the defendant in accord with the jury's verdict.

## II. The Evidence Adduced During Guilt Phase

Applying familiar principles of appellate review, we will recite the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party in the circuit court, and we will accord the Commonwealth the benefit of all inferences fairly deducible from that evidence. Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000).

During the early evening of January 16, 2000, the defendant, Parker, Jeffrey Remington, and three other inmates attended a meeting of a group referred to as the Ironwood Kindred. The meeting occurred in Building J-5, which is a part of the Augusta Correctional Center.

Earl Jones, a correctional officer, was assigned to Building J-5 that evening. Jones permitted the six inmates to enter a room where the meeting occurred. He closed the door, which contained windows, and "secured" the room.

As Jones sat down at his post outside the meeting room and began to "sort through" inmate passes that he had collected, he "noticed a commotion." Jones "got on" his radio and requested help from other correctional officers because he observed a fight. As Jones walked toward the room where the

2

inmates were meeting, three of the inmates "ran out of the room," and one of the inmates said, "[t]hey're stabbing him."

Jones went to the door and saw "Remington and Lenz stabbing Parker." Parker was lying "on his back; on the floor, between Remington and Lenz." Parker "was making a feeble attempt to defend himself. . . . He had his hands up." As Parker tried to use his hands to "block" the knives from piercing his body, the defendant and Remington "took their free hand[s]; pushed [Parker's] hands aside and then stabbed him."

Jones opened the meeting room door and ordered the defendant and Remington to stop stabbing Parker. Jones testified, "[t]hey simply looked at me and went back to stabbing him." Jones used his radio again to request help and asked his fellow correctional officers to hurry because Remington and the defendant "were trying to kill this guy." Jones did not go into the room because Remington and the defendant had knives, and Jones was unarmed.

Edward V. Houching, a correctional officer, responded to Jones' request for assistance. When Houching arrived at the meeting room, he saw the defendant and Remington stab Parker between 10 to 15 times as Parker was lying on the floor in a fetal position. Like Jones, Houching ordered the defendant and Remington to stop, but they continued to stab Parker.

3

Parker was not "doing anything to defend himself," and the defendant "was bent over, stabbing [Parker], over and over and over."

Within a few seconds after Houching arrived at the meeting room, two sergeants and correctional officer John Edward Simmons also responded. Simmons saw the defendant stab Parker six or seven times in an area that extended from Parker's "underarm" to his waist as Parker was lying on his side on the floor. Simmons also saw Remington stab Parker in the shoulder and back. After a sufficient number of correctional officers arrived at the meeting room, the officers, some of whom were armed with mace, entered the room, and Simmons told the defendant and Remington "to drop" their knives. The defendant placed his knife on a table, and Remington eventually surrendered his knife. The officers placed handcuffs on the defendant and Remington and escorted them from the area.

Rita K. Dietz, a registered nurse employed at the Augusta Correctional Center, rendered emergency assistance to Parker. When she walked into the meeting room to assist him, he was "very pale" and "surrounded by blood." As she approached him, she noticed that his shirt was soaked in blood. She ripped his shirt off. She testified that "[e]very time I encountered a couple of wounds, I encountered more wounds." She described

Parker's medical condition as "[v]ery critical."  She placed bandages on his wounds until she "ran out."  She testified, "at that point, the stretcher had arrived.  So we took the sheet off the stretcher . . . Parker was still alive, and he helped roll onto the sheet.  And we lifted the sheet up, which the one wound, out of the left side, just poured like water; like somebody had turned a faucet on, when we lifted him.  And we got him on the stretcher."  Parker was transported by ambulance to the Augusta Medical Center, where he died.

Gregory Price Wanger, the Assistant Chief Medical Examiner for the Western District of Virginia, performed an autopsy on Parker's body.  Wanger testified that Parker had sustained 68 stab wounds and one cut wound, all of which were inflicted upon Parker when he was alive.  Dr. Wanger explained that a stab wound is "shorter on the surface than it is deep" and "implies a thrusting motion[,]" whereas a cut wound "is longer on the surface than it is deep" and "implies a slashing-like motion."  The stab wounds penetrated Parker's chest, abdomen, back, left arm, and right forearm.

Dr. Wanger identified 40 stab wounds, "from the upper part of [Parker's] chest down through the middle and center part of the chest, and into the abdomen."  These wounds all contributed to his death.  Parker's left lung and liver were stabbed seven times each and the wounds produced serious

5

internal bleeding.  The wounds to Parker's lungs would have been fatal without the other wounds.  Additionally, "the wounds to the liver; by themselves, would have been fatal without the other wounds to [his] body."

### III.  Evidence Adduced During Penalty Phase

During the penalty phase of the trial, the Commonwealth presented evidence regarding the defendant's future dangerousness and the vileness of his crime.  The Commonwealth introduced the defendant's prior convictions for possession of a firearm after being convicted of a felony and breaking and entering.  The Commonwealth also relied upon evidence that it presented in the guilt phase of the trial.

The defendant offered evidence in mitigation of his offense.  Martin Rogozinski, a psychologist employed at the Augusta Correctional Center, testified that he spoke with the defendant soon after Parker was murdered and that it was Rogozinski's opinion that the defendant had murdered Parker based "solely on a religious conviction."

The defendant testified during the penalty phase.  He stated that he was a practicing member of the "Asatru" religion.  According to the defendant, several inmates had approached him and asked him to "construct" an Asatru group, but his efforts to do so were "thwarted" by Parker.

The defendant testified that on the evening of the murder, he planned to perform an Asatru ceremony in the meeting room. The defendant recited poetic literature and then asked Parker to approach an altar. The defendant testified that "I called [Parker] up to the altar and I asked — and I said to him, 'It's been a long, hard path between us.' And [Parker] said, 'Yes, it is.' And I pulled the knife out of my pocket. And I said, 'Are you trying to take it to the next step?' And he said, 'Yes, I am.' And so I stabbed him." The defendant admitted that he did not like Parker, that he had planned to kill Parker that day, and that he had threatened others in the meeting room with the knife.

The defendant presented the testimony of Gary Lee Bass, the Chief of Operations at the Virginia Department of Corrections and Jerry Wayne Armentrout, the Assistant Warden of Operations at the Red Onion State Prison. Bass and Armentrout testified about "prison life" and the security conditions that the defendant would encounter at a Virginia maximum security correctional facility if he were sentenced to life imprisonment. Two officers assigned to the Augusta Correctional Center testified that the defendant had never given them any problems while he was under their supervision.

Patricia Daley Lenz, the defendant's mother, testified about his childhood and family interaction. She stated that

7

the defendant's biological father was absent during much of the defendant's early childhood and that the defendant's adoptive father was very strict and favored his biological child.

## IV.  Assignments of Error Waived

The defendant filed 18 separate assignments of error, which he has reduced to 15 questions presented on appeal. However, the defendant failed to brief three of his assignments of error.  Consequently, they are waived, and we will not consider them on appeal.  Kasi v. Commonwealth, 256 Va. 407, 413, 508 S.E.2d 57, 60 (1998), cert. denied, 527 U.S. 1038 (1999).  The assignments of error waived are:  "2.  The [c]ourt erred in its denial of defendant's motion for discovery and inspection;" "9.  The [c]ourt erred in its denial of defendant's motion to prevent introduction of defendant's prison record;" and "15.  The [c]ourt erred in its refusal to allow defendant to pose certain questions to jury panel."

## V.  Issues Previously Decided

The defendant raised several issues on appeal which have been decided adversely to his claims by our previous decisions.  We adhere to those rulings, and we will not discuss them further.  The issues previously resolved are:

8

(i)  Whether Virginia's death penalty statutes provide "meaningful guidance" to the jury.  See Williams v. Commonwealth, 248 Va. 528, 535, 450 S.E.2d 365, 371 (1994), cert. denied, 515 U.S. 1161 (1995).

(ii)  Whether Virginia's penalty phase instructions adequately informed the jury regarding the concept of mitigation.  See Swann v. Commonwealth, 247 Va. 222, 228, 441 S.E.2d 195, 200, cert. denied, 513 U.S. 889 (1994).

(iii)  Whether the use of unadjudicated conduct to prove future dangerousness without proof of such conduct beyond a reasonable doubt is constitutional.  See Goins v. Commonwealth, 251 Va. 442, 453, 470 S.E.2d 114, 122, cert. denied, 519 U.S. 887 (1996).

(iv)  Whether the "upon good cause shown" standard in Code § 19.2-264.5 is constitutional.  See Breard v. Commonwealth, 248 Va. 68, 76, 445 S.E.2d 670, 676, cert. denied, 513 U.S. 971 (1994).

(v)  Whether Virginia's capital murder statute is unconstitutional because it permits the court to consider hearsay evidence in the post-sentence report.  See Goins, 251 Va. at 453, 470 S.E.2d at 122.

(vi)  Whether the appellate review procedures in Virginia are constitutional.  See Mickens v. Commonwealth, 252 Va. 315,

9

320, 487 S.E.2d 302, 305 (1996), cert. denied, 520 U.S. 1269 (1997).

(vii)  Whether the circuit court erred in denying the defendant's motion to mail a questionnaire to the potential jury venire.  See Goins, 251 Va. at 454, 470 S.E.2d at 122; Strickler v. Commonwealth, 241 Va. 482, 489-90, 404 S.E.2d 227, 232, cert. denied, 502 U.S. 944 (1991).

(viii)  Whether the circuit court erred in denying defendant's motion to prohibit death qualification of jurors and whether the circuit court erred in overruling defendant's objection to the seating and the death qualification of the jury.  See Yeatts v. Commonwealth, 242 Va. 121, 127, 410 S.E.2d 254, 258 (1991); cert. denied, 503 U.S. 946 (1992); Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990), cert. denied, 502 U.S. 824 (1991); Pruett v. Commonwealth, 232 Va. 266, 277-78, 351 S.E.2d 1, 7-8 (1986), cert. denied, 482 U.S. 931 (1987).

(ix)  Whether the circuit court erred in denying defendant's motion to examine investigators under oath.  See Burns v. Commonwealth, 261 Va. 307, 328, ___ S.E.2d ___, ___ (2001).

VI. Effective Assistance of Counsel

The defendant argues that he was "denied effective assistance of [c]ounsel in that the Department of Corrections

10

housed [him] hours away from the site of the trial and of the offices of his appointed attorneys.  Because of these great distances the defendant could only meet with his attorneys for a short period of time.  The time the defendant spent with his attorneys was much less than the travel time to and from the location."

We will not consider this claim on direct appeal.  Claims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal.  Johnson v. Commonwealth, 259 Va. 654, 675, 529 S.E.2d 769, 781, cert. denied, ___ U.S. ___, 121 S.Ct. 432 (2000); Roach v. Commonwealth, 251 Va. 324, 335 n.4, 468 S.E.2d 98, 105 n.4, cert. denied, 519 U.S. 951 (1996).

VII.  Pretrial Motions

A.

The defendant filed a pretrial motion and requested that the circuit court appoint James Evans Aiken as an expert witness on the subject of prison operations and classifications.  Aiken is a former warden and a former commissioner of the Indiana Department of Corrections.  The defendant wanted to retain Aiken, at the Commonwealth's expense, to assist the defendant with the presentation of "prison life" evidence.  The defendant, relying upon Ake v. Oklahoma, 470 U.S. 68 (1985), and Husske v. Commonwealth, 252

11

Va. 203, 476 S.E.2d 920 (1996), argues that the due process and equal protection clauses of the Fourteenth Amendment of the federal constitution required the circuit court to appoint, at the Commonwealth's expense, an expert to assist him.

We disagree with the defendant. In Ake, the Supreme Court considered whether an indigent defendant has a constitutional right to a psychiatric examination and psychiatric assistance necessary to prepare an effective defense based upon his mental condition, when his sanity at the time he committed the criminal offense was seriously in question. The Supreme Court held that an indigent defendant is entitled to the appointment of a psychiatrist to assist him in his defense in such circumstances and explained its rationale:

> "We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, see Ross v. Moffitt, 417 U.S. 600 (1974), it has often reaffirmed that fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,' id., at 612. To implement this principle, we have focused on identifying the 'basic tools of an adequate defense . . . ,' Britt

12

v. North Carolina, 404 U.S. 226, 227 (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them."

Ake, 470 U.S. at 77.  The Supreme Court concluded that the due process clause's guarantee of fundamental fairness is implicated

"when [an indigent] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, [and that in such circumstances] the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."

Id. at 83.

In Husske, we applied the Supreme Court's holding in Ake, and we held that the Commonwealth of Virginia, upon request, must provide indigent defendants with the basic tools of an adequate defense and that in certain instances, these basic tools may include the appointment of non-psychiatric experts. Husske, 252 Va. at 211, 476 S.E.2d at 925.  We stated:

"[A]n indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute.  We hold that an indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is 'likely to be a significant factor in his defense,' Ake, 470 U.S. at 82-83, and that he will be prejudiced by the lack of expert assistance.  Id. at 83.  An indigent defendant may satisfy this burden by demonstrating that the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a

13

> fundamentally unfair trial. . . . The indigent
> defendant who seeks the appointment of an expert
> must show a particularized need."

Id. We held that an indigent defendant who seeks the appointment of an expert, at the Commonwealth's expense, must show a particularized need for such services and that he will be prejudiced by the lack of expert assistance. Id. at 213, 476 S.E.2d at 926. We stated that whether a defendant has made the requisite showing of a particularized need lies within the discretion of the circuit court. Id. at 212, 476 S.E.2d at 926.

Applying the aforementioned principles, we hold that the circuit court did not abuse its discretion in denying the defendant's request for the appointment of an expert at the Commonwealth's expense on the subject of "prison life." The circuit court's denial of the defendant's request did not result in a fundamentally unfair trial, and we note that the defendant, who adduced testimony from witnesses who testified on the subject of "prison life," suffered no prejudice.

The defendant also argues that "[i]n addition to equal protection and due process, the [S]ixth [A]mendment right to counsel and due process, compensation for experts, even in non-capital cases, has been required to satisfy the [S]ixth [A]mendment's entitlement to the effective assistance of

14

counsel."  The defendant's claim is just another twist of the

foregoing contentions, and we reject it.

B.

The defendant argues that the circuit court erred in

denying his pretrial "motion to poll individual jurors as to

which statutory aggravating factors and elements of vileness

were found."  The defendant, in his brief, says that the

circuit court denied his motion, and the defendant refers this

Court to an order dated July 25, 2000, which is contained in

the appendix as well as the record.  The circuit court,

however, did not grant or deny the defendant's motion in the

circuit court's order dated July 25, 2000.  We have reviewed

all the circuit court's orders which are in the record, and we

have not found an order disposing of this particular motion.

We can only conclude that the circuit court did not rule on

the defendant's motion, and the defendant failed to request a

ruling from the circuit court.  Therefore, the defendant has

waived his claim because he was required to request a ruling

from the circuit court, and he failed to do so.

VIII.  Voir Dire

A.

The defendant argues that the circuit court "erred in

sustaining the Commonwealth's objection to defense counsel's

inquiring during voir dire of a prospective juror['s] ability

15

to follow Virginia law concerning mitigation evidence."  The defendant says that the circuit court's failure to permit him to ask these questions to the venire "regarding the individual mitigation elements contained in the Virginia statutes" violated the Sixth, Eighth, and Fourteenth Amendments to the federal constitution.

The defendant complains about his voir dire of two members of the venire, Christina M. Rigney and Keith D. Wilkins.  During the defendant's voir dire of Rigney, the following colloquy occurred:

> "[DEFENSE COUNSEL]:  Okay.  Would you be able to consider facts — and I call them facts of mitigation, such as a troubled family history, abuse of drugs . . .
>
> "MS. RIGNEY:  Yes.
>
> "[COMMONWEALTH'S ATTORNEY]:  Judge, I'm going to object, unless there's instructions about mitigation factors . . .
>
> "COURT:  That's one thing.  And the second thing is that I  — I think your question is objectionable because you're asking her to decide a hypothetical question, Mr. Hill [defendant's counsel].
>
> "[DEFENSE COUNSEL]:  I — I'll withdraw the question.
>
> "COURT:  Okay.
>
> "[DEFENSE COUNSEL]:  That's all the questions I have for you.
>
> "MR. RIGNEY:  Okay.

16

"[DEFENSE COUNSEL]:  Thank you."

During the defendant's <u>voir</u> <u>dire</u> of Wilkins, the following colloquy occurred:

"[DEFENSE COUNSEL]:  Before deciding on the — whether to impose a punishment of life or a punishment of guilt, if the Court were to instruct you that there were certain facts that would mitigate the sentence . . .

"[COMMONWEALTH'S ATTORNEY]:  Judge, I'm going to object to that.  There's no instruction of the Court in that regard.

"[DEFENSE COUNSEL]:  Judge, I thought I had asked that question of an earlier witness.  And maybe I just didn't . . .

"COURT:  He objected . . . You did, and he can object to it . . . We haven't given Mr. Wilkins that instruction.

"You know, gentlemen, that's going to require a great deal of work at this point.  I mean, as you know . . .

"The question is whether you will follow the instructions.

"[DEFENSE COUNSEL]:  I . . .

"COURT:  All of them.

"[DEFENSE COUNSEL]:  Right.  I'll withdraw the question, Your Honor.

"COURT:  All right."

As the above colloquies clearly demonstrate, the defendant's counsel withdrew his questions about mitigation when he was questioning Rigney and Wilkins.  We will not permit the defendant's counsel to withdraw questions and then,

17

on appeal, assign error to the circuit court's ruling on objections to the questions that he voluntarily withdrew. We hold that his contentions are procedurally defaulted.

B.

After the jury was sworn and seated, the defendant stated that he "also object[s] to the [c]ourt's ruling disallowing the questions regarding the individual mitigation elements of the — of the statute." The defendant assigns a separate error to this objection. However, as we have already stated, we will not permit the defendant to withdraw questions that he asked of the venire and subsequently make an objection based upon questions that he voluntarily withdrew. Just as significant, once a jury is sworn, any objection to the seating of a juror can only be made with leave of court, and the defendant failed to obtain leave of court. Code § 8.01-352; Hill v. Berry, 247 Va. 271, 273-74, 441 S.E.2d 6, 7 (1994).

IX. Issues that Arose at Trial

A.

As we have already stated, the victim, Parker, was an inmate incarcerated in the Augusta Correctional Center. The Commonwealth filed a pretrial motion in limine requesting that the circuit court prohibit the defendant from introducing evidence about the victim's criminal record. The circuit

court granted the Commonwealth's motion.  In spite of the circuit court's ruling, during the penalty phase of the trial, the defendant tried to elicit information regarding the victim's criminal record.  The Commonwealth objected, and the circuit court sustained the objection.

The defendant argues that the circuit court erred in sustaining the objection because the defendant says that he was entitled to present to the jury all the facts when it is making a decision regarding his life or death.  Continuing, the defendant says that Code § 19.2-264.4(B) requires that the circuit court admit in evidence the victim's criminal record because that statute permits the admission of evidence regarding circumstances surrounding the offense, subject to the rules of evidence.  We disagree with the defendant's assertions.

Code § 19.2-264.4(B) states:

"In cases of trial by jury, evidence may be presented as to any matter which the court deems relevant to sentence, except that reports under the provisions of § 19.2-299, or under any rule of court, shall not be admitted into evidence.
"Evidence which may be admissible, subject to the rules of evidence governing admissibility, may include the circumstances surrounding the offense, the history and background of the defendant, and any other facts in mitigation of the offense.  Facts in mitigation may include, but shall not be limited to, the following:  (i) the defendant has no significant history of prior criminal activity, (ii) the capital felony was committed while the defendant was under the influence of extreme mental or emotional

19

disturbance, (iii) the victim was a participant in the defendant's conduct or consented to the act, (iv) at the time of the commission of the capital felony, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was significantly impaired, (v) the age of the defendant at the time of the commission of the capital offense, or (vi) mental retardation of the defendant."

Contrary to the defendant's assertions, Code § 19.2-264.4(B) did not require the circuit court to admit in evidence the victim's criminal history, which was not relevant to any issue in this proceeding. The defendant simply wanted to introduce evidence of the victim's prior criminal record to show that the victim had been convicted of murder. The victim's prior convictions had no relevance to the issue whether the defendant's acts were vile, inhuman, or showed depravity of mind, and the victim's criminal record was not relevant to the issue whether the defendant would constitute a serious continuing threat to society.

We also note that the defendant had no constitutional right to present evidence of the victim's criminal history and that the defendant's reliance upon Lockett v. Ohio, 438 U.S. 586 (1978), is misplaced. In Lockett, the Supreme Court held that the Eighth and Fourteenth Amendments of the federal constitution require that "the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a

defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (plurality opinion). The Supreme Court pointed out in Lockett that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or circumstances of his offense." Id. at 605 n.12 (plurality opinion).

As we have already stated, the victim's criminal history was not relevant and had no bearing on the defendant's character, prior record, or the circumstances of the defendant's offense. The defendant admitted during the penalty phase of the trial that he did not like the victim, that he had intended to kill the victim, and that he killed the victim because the victim did not respect the defendant's religious beliefs.

B.

The circuit court, without any objection from the defendant, gave the following jury instruction:

> "The Court instructs the jury that the evidence must establish beyond a reasonable doubt that the defendant actually caused the death of Brent Parker before you can find him guilty of capital murder. One who is present, aiding and abetting the actual killing, but who is not the immediate perpetrator, is a principal in the second degree and may not be found guilty of capital murder.

"You may find the defendant guilty of capital murder if the evidence establishes that the defendant jointly participated in the fatal stabbing, if it is established beyond a reasonable doubt that the defendant was an active and immediate participant in the act or acts that caused the victim's death."

The defendant contends that the circuit court erred in granting this jury instruction. The defendant, however, admits that he did not object in the circuit court. Accordingly, the defendant's argument is procedurally barred, and we will not consider it on appeal. Rule 5:25.

## C.

The jury returned a verdict which fixed the defendant's punishment at death based upon both aggravating factors contained in Code § 19.2-264.2, future dangerousness and vileness. The defendant argues that the circuit court erroneously refused his proposed instruction which stated that the jury could only fix the defendant's punishment at death based upon the vileness predicate if the jury unanimously agreed that the Commonwealth's evidence proves torture or depravity of mind or an aggravated battery to the victim beyond the minimum necessary to accomplish an act of murder. The proposed instruction would have also informed the jury that its "decision must be unanimous as to at least one of the above to find that [the defendant's] conduct was outrageously or wantonly vile, horrible or inhuman."

22

We need not decide the defendant's contention because the jury fixed the defendant's punishment at death based upon both statutory aggravators. The jury's finding that the defendant constituted a continuing serious threat to society is an independent basis for the jury's imposition of the death penalty. The defendant does not challenge the jury's finding of the future dangerousness aggravator, therefore, that issue is not before this Court on appeal. See Rash v. Hilb, Rogal & Hamilton Co., 251 Va. 281, 286-87, 467 S.E.2d 791, 794-95 (1996); United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 308, 440 S.E.2d 902, 907 (1994); Crist v. Metropolitan Mortgage Fund, 231 Va. 190, 193, 343 S.E.2d 308, 310 (1986); Stamie E. Lyttle Co. v. County of Hanover, 231 Va. 21, 27, 341 S.E.2d 174, 178 (1986); Haynes v. Bekins Van & Storage Co., 211 Va. 231, 233, 176 S.E.2d 342, 344 (1970).

We do not consider the defendant's argument that the circuit court's failure to grant the proffered jury instruction violates his Sixth and Fourteenth Amendment rights to effective assistance of counsel because such claims are not cognizable upon direct appeal. Johnson, 259 Va. at 675, 529 S.E.2d at 781.

X.  Motion to Set Aside the Jury Verdict

The defendant argues that the Commonwealth failed to present sufficient evidence that he had committed a capital

murder in violation of Code § 18.2-31(3). The defendant states that "due to the similarities in the weapons taken from Remington and Lenz it was impossible to determine which of Parker's wounds came from Lenz's weapon." The defendant contends that the Commonwealth failed to prove "that stab wounds created by Lenz could by themselves have killed Parker." Continuing, the defendant argues that the testimony of correctional Officers Jones, Simmons, and Houching was not credible and that the Commonwealth failed to prove that the defendant had a specific intent to kill the victim.

The defendant's contentions are without merit. We hold that the Commonwealth proved, beyond a reasonable doubt, that the defendant intentionally killed Parker. The jury was instructed that it "may find the defendant guilty of capital murder if the evidence establishes that the defendant jointly participated in the fatal stabbing, if it is established beyond a reasonable doubt that the defendant was an active and immediate participant in the act or acts that caused the victim's death." As we have already stated, Officer Jones testified that he saw the defendant stab Parker "on the front part of [Parker's] body." Officer Houching testified that he saw the defendant stab Parker between 10 and 15 times. Officer Simmons testified that when he arrived at the meeting

24

room, he saw the defendant stab Parker about six or seven times.

Officer Jones also testified that the defendant stabbed the victim from the "waist up."  Dr. Wagner testified that the victim had 40 stab wounds in his chest area and that the stab wounds had penetrated the victim's lungs, liver, and other major organs.  He also testified that all the wounds contributed to the victim's death.

The defendant, relying upon Smith v. Commonwealth, 220 Va. 696, 261 S.E.2d 550 (1980), argues that the Commonwealth failed to prove beyond a reasonable doubt that he acted with premeditation.  The defendant's argument is without merit.  We stated in Smith:

> "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder.  The intent to kill must come into existence at some time before the killing; it need not exist for any particular length of time.  As we said in Pannill v. Commonwealth, 185 Va. 244, 255, 38 S.E.2d 457, 463 (1946), quoting from McDaniel v. Commonwealth, 77 Va. 281, 284 (1883), 'it is necessary that the killing should have been done on purpose and not by accident or without design. . . .'  The exact state of the defendant's mind at the time of killing is the crucial factor in determining intent.  'It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense.'  Akers v. Commonwealth, 216 Va. 40, 48, 216 S.E.2d 28, 33 (1975)."

220 Va. at 700-01, 261 S.E.2d at 553; accord Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989).  The

25

evidence of record in this case was sufficient to permit the jury to find that the defendant acted with premeditation. The jury was entitled to conclude that the defendant had a specific intent to kill the victim, based upon the defendant's acts of stabbing the victim repeatedly in the chest with a knife.

The defendant's argument that the testimony of Officers Jones, Simmons, and Houching is not credible lacks merit. It was the province of the jury to assess the credibility of the witnesses. Phan v. Commonwealth, 258 Va. 506, 513, 521 S.E.2d 282, 286 (1999); Goins v. Commonwealth, 218 Va. 285, 289, 237 S.E.2d 136, 139 (1977).

## XI. Statutory Review

### A.

Pursuant to Code § 17.1-313(C)(1), we must determine whether the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary factor. We observe that the defendant does not contend that the sentence of death imposed upon him was the influence of passion, prejudice, or other arbitrary factor. Nonetheless, we have reviewed the record, and we find no evidence that any such factor was present or influenced either the jury's or the circuit court's sentencing decision.

### B.

Code § 17.1-313(C)(2) requires this Court to determine whether the sentence of death in this case is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  Pursuant to Code § 17.1-313(E), we have accumulated the records in all capital murder cases reviewed by this Court.  The records include not only those capital murder cases in which the death penalty was imposed, but also those cases in which the circuit court or jury imposed a life sentence, and the defendant petitioned this Court for an appeal.

C.

The defendant argues in his brief that the "dominating circumstances surrounding [his] crime is [sic] the determination that the victim and defendant were at the time of it's [sic] commission prisoners confined in a state correctional facility.  There is no underlying felony in this case.  Had this same event taken place outside the prison it could only have been charged as first degree murder.  The defendant therefore argues that the similar cases this [C]ourt should compare his with are those dealing with murders where the defendant and the victim are inmates at a correctional facility."  We disagree with the defendant.

In Johnson v. Commonwealth, 259 Va. at 683, 529 S.E.2d at 786, we rejected an argument which is substantially similar to

27

the argument that the defendant asserts in this appeal.  In

Johnson, the defendant argued that his death sentence was

disproportionate and excessive when compared to the penalties

imposed on other defendants who were 16 years old when they

committed similar offenses.  Rejecting this contention, we

held that when conducting our proportionality review, we must

determine whether other sentencing bodies in this Commonwealth

generally impose the supreme penalty for comparable or similar

crimes, considering both the crime and the defendant.  We

refused to limit our proportionality review to cases involving

16-year-old males who had committed similar offenses.  Rather,

we compared the record in Johnson with the records in other

capital murder cases, and, because the jury based Johnson's

sentence of death upon both future dangerousness and vileness,

we gave particular consideration to other capital cases in

which the death penalty was imposed under both predicates.  We

pointed out that the defendant's age was only one factor to

consider in determining whether other juries generally imposed

the sentence of death for similar crimes.

Likewise, in the appeal before this Court, the fact that

the defendant was an inmate, who killed another inmate, is

only one factor to consider in determining whether other

juries generally impose the sentence of death for similar

crimes.  Code § 17.1-313(C)(2) does not require that this

Court confine its review to crimes that are identical; rather, we consider comparable or similar crimes.

Applying the appropriate test, we have examined records in all capital murder cases previously reviewed by this Court when, as here, the death penalty was imposed based upon Code § 18.2-31(3), the capital murder of an inmate while the defendant was confined in a state or local correctional facility.  See Payne v. Commonwealth, 233 Va. 460, 357 S.E.2d 500, cert. denied, 484 U.S. 933 (1987).  Additionally, we have examined the records in all capital murder cases previously reviewed by this Court when the sentence of death was based upon aggravated battery, vileness, and future dangerousness and the victim died as a result of multiple stabbings.  See Johnson v. Commonwealth, 259 Va. 654, 529 S.E.2d 769; Wilson v. Commonwealth, 249 Va. 95, 452 S.E.2d 669, cert. denied, 516 U.S. 841 (1995); Breard v. Commonwealth, 248 Va. 68, 445 S.E.2d 670; Murphy v. Commonwealth, 246 Va. 136, 431 S.E.2d 48, cert. denied, 510 U.S. 928 (1993); Satcher v. Commonwealth, 244 Va. 220, 421 S.E.2d 821 (1992), cert. denied, 507 U.S. 933 (1993); King v. Commonwealth, 243 Va. 353, 416 S.E.2d 669, cert. denied, 506 U.S. 957 (1992); Mu'Min v. Commonwealth, 239 Va. 433, 389 S.E.2d 886 (1990), aff'd, 500 U.S. 415 (1991); Watkins v. Commonwealth, 238 Va. 341, 385 S.E.2d 50 (1989), cert. denied, 494 U.S. 1074 (1990); Hoke v.

29

Commonwealth, 237 Va. 303, 377 S.E.2d 595, cert. denied, 491 U.S. 910 (1989); Coleman v. Commonwealth, 226 Va. 31, 307 S.E.2d 864 (1983), cert. denied, 465 U.S. 1109 (1984); Smith v. Commonwealth, 219 Va. 455, 248 S.E.2d 135 (1978), cert. denied, 441 U.S. 967 (1979).

Our examination of these decisions, as well as capital cases resulting in life imprisonment, reveals that the defendant's sentence of death is neither excessive nor disproportionate when compared to sentences generally imposed by sentencing bodies in this jurisdiction for comparable or similar crimes.

### D.

The defendant argues that his research suggests that "despite there being over twenty two cases as [sic] inmate on inmate homicides in Virginia prisons since 1985 . . . only one has resulted in a sentence of death . . . . Furthermore, the death sentence of Joseph Payne was later committed [sic] to life in prison by the Governor." Hence, the defendant contends that his sentence is excessive.

We find no merit in the defendant's assertion that his sentence is excessive merely because the Governor of this Commonwealth chose to commute the death sentence of an inmate who had killed another inmate. We do not consider the actions

of the executive branch when making our statutory determination of proportionality.

The defendant also argues that the sentence of death is excessive and disproportionate, and that it violates the Sixth, Eighth, and Fourteenth Amendments to the federal constitution.  This argument is not the subject of an assignment of error and, therefore, we will not consider it on appeal.

### XII.  Verdict Form

This Court, sua sponte, asked the litigants to address the verdict form utilized during the penalty phase of the defendant's trial in view of our decision in Atkins v. Commonwealth, 257 Va. 160, 179, 510 S.E.2d 445, 457 (1999). Upon considering the letter briefs, the record, and argument of counsel, we conclude that any questions concerning the verdict form in this case are procedurally defaulted because the defendant neither raised these issues in the circuit court nor assigned error to the verdict form before this Court.  See Rule 5:25; Burns, 261 Va. at 343 n.16, ___ S.E.2d at ___ n.16; Orbe v. Commonwealth, 258 Va. 390, 403 n.13; 519 S.E.2d 808, 816 n.13 (1999), cert. denied, 529 U.S. 1113 (2000).

### XIII.  Conclusion

Having reviewed the sentence of death, finding no reversible error in the record, and perceiving no reason to

commute the death sentence, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.
