COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


JAMES DONALD DICKENSON, II

MEMORANDUM OPINION[*] BY

v.    Record No. 1095-02-1        JUDGE D. ARTHUR KELSEY
                                  APRIL 15, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

John D. Konstantinou (Williamsburg Law Group,
PLC, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


James Dickenson claims that the trial court abused its discretion by overruling his motion for the appointment of a handwriting expert at his trial for forgery and uttering.  For the reasons that follow, we affirm the trial court's decision.

I.

On appeal, we review the evidence "in the light most favorable to the Commonwealth" and "accord the Commonwealth the benefit of all inferences fairly deducible from the evidence."  Morrisette v. Commonwealth, 264 Va. 386, 389, 569 S.E.2d 47, 50

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2002); see also Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc).  That principle requires us to "discard the evidence of the accused" which conflicts, either directly or inferentially, with the Commonwealth's evidence.  Holsapple, 39 Va. App. at 528, 574 S.E.2d at 758-59 (citation omitted); see also Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

Around May 20, 2001, James Dickenson asked his friend, Perry Meredith, if he could stay with Meredith for a week. Dickenson was having problems with his girlfriend at the time and believed staying with Meredith would remedy the situation. Meredith agreed.

During Dickenson's six-day stay with Meredith, the two men smoked at least "two or three hundred dollars worth" of cocaine daily.  Using Meredith's tax return to fund the cocaine binge, Meredith usually went with Dickenson to "go in and purchase" the cocaine.  Though Meredith admitted handing Dickenson cash to buy cocaine at times during the week, he unequivocally declared that he "never wrote him any checks."

While heading to work one morning during Dickenson's stay, Meredith stopped by his bank's ATM to withdraw cash.  To his surprise, Meredith learned that his account had much less money than he had expected.  He returned home, called a bank representative, and, upon learning that unauthorized checks had been drawn on his account, "went over to where [he] kept [his]

-

checkbook, and it wasn't there."  Meredith informed the bank that his checkbook was missing and ordered the bank to "close the account."  On May 30, Meredith visited his bank, filed a complaint, and executed affidavits of fraudulent transactions for his missing funds.

Cathy Forrest, a fraud investigator for SunTrust Bank, began investigating Meredith's complaint.  From the bank's files, Forrest recovered the records for Meredith's missing checks (numbered 711 and 714).  The files indicated that check number 711, for $150, was "negotiated on May 22nd at 2:17 in the afternoon," and check number 714, also in the amount of $150, "was negotiated on May the 24th at 4:17 in the afternoon."  Forrest also presented photographs taken by the bank's security camera, which showed the "individual who passed the checks." The photographs also showed bank tellers Kellee Manning and Kristy Maynor cashing, respectively, checks 711 and 714.  Both checks were made payable to, and endorsed by, Dickenson.

A "couple of weeks later," Meredith's checkbook was still missing, so Meredith "went down to the Newport News Police Department" and reported the unauthorized use of his checks. Meredith received a phone call a "couple of days later" from "a girl named Sharon."  Identifying herself as Dickenson's girlfriend, Sharon informed Meredith that his checkbook was at her townhouse.  Meredith went to her house, recovered the checkbook, and returned the unused checks to the bank.

-

Before trial, Dickenson filed a motion requesting the appointment of a handwriting expert. "What we want is an expert, and it can be an employee of the Division of Forensic Science," Dickenson's counsel requested, "to examine this gentleman's handwriting and the handwriting on the checks to see if this man, in his opinion, signed and wrote those checks."

Dickenson's counsel also mentioned the possibility of such an expert examining Meredith's signature "if the Court deems it appropriate." Counsel, however, immediately added: "But, I mean, as far as I'm concerned, if they examine my client's handwriting and the handwriting on the checks, that would be sufficient for my point of view." An expert appointed to examine Dickenson's handwriting, counsel noted in conclusion, "in fairness" should also look at examples of Meredith's handwriting.

The trial court denied the motion for a handwriting expert, holding that Dickenson had not shown a "particularized need." The case proceeded to trial without any handwriting experts for either side. Meredith testified that, despite smoking cocaine on a daily basis during Dickenson's stay, he was "absolutely certain" that he neither signed his checks nor authorized anyone to sign on his behalf. Then, viewing the photographs from the bank's security camera, Meredith identified Dickenson as the individual who presented the fraudulent checks to the bank. In

-

one photograph, in fact, Meredith recognized that Dickenson was wearing Meredith's "black Budweiser tee-shirt."

Following the presentation of evidence, the trial court noted that the Commonwealth, by proving that Dickenson had presented forged checks to the bank, provided prima facie evidence of Dickenson's guilt for both forgery and uttering. With the defense unable to rebut the Commonwealth's evidence, the court found Dickenson guilty of the two forgery charges as well as the two uttering charges. The trial court then sentenced Dickenson to prison for forty years (ten years for each offense), suspending thirty-seven years and two months of the sentence.

## II.

"An indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute." Lenz v. Commonwealth, 261 Va. 451, 462-63, 544 S.E.2d 299, 305 (2001). A defendant "must demonstrate that the subject which necessitates the assistance of the expert is 'likely to be a significant factor in his defense'" and that depriving the expert's assistance will be prejudicial. Lenz, 261 Va. at 462, 544 S.E.2d at 305 (quoting Husske v. Commonwealth, 252 Va. 203, 211, 476 S.E.2d 920, 925 (1996), and Ake v. Oklahoma, 470 U.S. 68, 82-83 (1965)).

Meeting this burden requires the defendant to show more than "'mere hope or suspicion that favorable evidence is

-

available'" through the expert.  Barksdale v. Commonwealth, 31 Va. App. 205, 211, 522 S.E.2d 388, 390 (1999) (quoting Husske, 252 Va. at 212, 476 S.E.2d at 925-26).  Instead, the defendant must show a "particularized need" for the expert's testimony. Bailey v. Commonwealth, 259 Va. 723, 737, 529 S.E.2d 570, 578 (2000); see also Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 175-76 (1999).

A particularized need is "one which is material to the preparation of his defense . . . and that the denial of such services would result in a fundamentally unfair trial."  Bailey, 259 Va. at 737, 529 S.E.2d at 578.  "[W]hether a defendant has made the requisite showing of a particularized need lies within the discretion of the circuit court."  Lenz, 261 Va. at 462, 544 S.E.2d at 305 (citing Husske, 252 Va. at 212, 476 S.E.2d at 926).  Though the trial court has broad discretion, it "must be exercised reasonably and not arbitrarily or capriciously." Leitao v. Commonwealth, 39 Va. App. 435, 438, 573 S.E.2d 317, 319 (2002).

The trial court did not abuse its discretion in overruling Dickenson's request for a handwriting expert "to examine [Dickenson's] handwriting and the handwriting on the checks to see if this man, in his opinion, signed and wrote the checks." Neither forgery nor uttering, the two crimes upon which Dickenson was tried and convicted, requires direct proof that the defendant personally forged or altered the checks.

-

Under Virginia law, "'possession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged.'"  Oliver v. Commonwealth, 35 Va. App. 286, 295, 544 S.E.2d 870, 874-75 (2001) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984)).  Meredith's unequivocal testimony disclaiming the drawer signature on the check as his own established the forgery predicate for the inference based upon possession.  Dickenson's possession of the forged check, claiming himself as payee, raised a sufficient inference of guilt to support his conviction —— despite the lack of evidence that he personally forged the check.  That so, the denial of an expert to examine Dickenson's handwriting in an effort to disprove him as the forger did not "result in a fundamentally unfair trial."  Bailey, 259 Va. at 737, 529 S.E.2d at 578.

Similarly, the offense of uttering, defined as "an assertion by word or action that a writing known to be forged is good and valid," Oliver, 35 Va. App. at 295, 544 S.E.2d at 874-75 (citation omitted), contains no requirement that the defendant forge the writing.  See Dillard v. Commonwealth, 32 Va. App. 515, 519, 529 S.E.2d 325, 327 (2000) (requiring only that known forged writing be passed as valid).  Here again, not having an expert to examine Dickenson's handwriting did not preclude him from receiving a fundamentally fair trial.

-

We do not address whether the denial of an expert to examine Meredith's handwriting resulted in a fundamentally unfair trial because Dickenson failed to preserve that issue for appeal.[1]  When addressing the trial court, Dickenson's counsel focused on the need to examine Dickenson's own handwriting.  As an aside, he said that the expert could also examine Meredith's handwriting — but that, as he put it, "as far as I'm concerned, if they examine my client's handwriting and the handwriting on the checks, <u>that would be sufficient</u> for my point of view."  A reasonable trial judge would understand that remark to be an abandonment of any specific, freestanding request for expert analysis of Meredith's handwriting.  <u>See</u>, <u>e.g.</u>, <u>Buchanan v. Commonwealth</u>, 238 Va. 389, 416, 384 S.E.2d 757, 773 (1989) (holding that counsel's remark, "That would be fine," after trial judge denied request abandoned the earlier request).

All the more, having conceded the point away in the trial court, Dickenson can hardly now claim that the absence of expert analysis of Meredith's handwriting resulted in a fundamentally unfair trial.  Put another way, after taking the position that it was "sufficient" to have an expert examine his own

---

[1] Under Rule 5A:18, we will not "consider an argument on appeal which was not presented to the trial court."  <u>Morrison v. Commonwealth</u>, 37 Va. App. 273, 279 n.1, 557 S.E.2d 724, 727 n.1 (2002) (quoting <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)).  We also do not address whether the "good cause" or "ends of justice" exceptions to Rule 5A:18 apply, given that Dickenson does not argue on appeal for either.

-

handwriting —— but not Meredith's —— Dickenson cannot reverse course on appeal and claim it was constitutionally insufficient to proceed to trial without an expert analysis of Meredith's handwriting.

III.

In sum, we hold that the trial court did not abuse its discretion by denying Dickenson's request for an expert to examine his handwriting to determine if he personally forged the checks. We offer no opinion on whether an expert evaluation of Meredith's handwriting should have been ordered, treating the issue as having been abandoned in the trial court and thus waived on appeal.

<u>Affirmed</u>.
