Present:  Kinser, C.J., Lemons, Goodwyn, Millette, Mims,
Powell, JJ., and Lacy, S.J.

ROBERT CHARLES GLEASON, JR.,
a/k/a CHARLES R. FLYNN

v.   Record No. 111956

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
June 7, 2012

ROBERT CHARLES GLEASON, JR.,
a/k/a CHARLES R. FLYNN

v.   Record No. 111957

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF WISE COUNTY
John C. Kilgore, Judge

Robert Charles Gleason, Jr., received two death sentences following pleas of guilty to capital murder in the killings of Harvey Grey Watson and Aaron Cooper.  Although Gleason has waived his appeals of right, Code § 17.1-313 mandates that we review the death sentences.  In this review, we consider whether the sentences were imposed "under the influence of passion, prejudice or any other arbitrary factor" and whether the sentences are "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  Code § 17.1-313(C).

I.  Background

On May 8, 2009, Harvey Watson was murdered at Wallens Ridge State Prison.  His cellmate, Robert Gleason, was charged

with the "willful, deliberate, and premeditated killing of any person by a prisoner confined in a state or local correctional facility," a capital offense under Code § 18.2-31(3). On December 21, 2010, following an evaluation to confirm his competency, Gleason pled guilty to the murder of Watson in the Circuit Court of Wise County. Gleason confessed under oath, stating that he planned the murder to occur on the two-year anniversary of a previous homicide that he had committed.

Gleason admitted to binding Watson with torn bed sheets, beating him, taunting him about his impending death, shoving a urine sponge in his face and a sock in his mouth, and finally strangling him with fabric from the sheet. According to Gleason, he concealed the body in his cell for fifteen hours, making excuses for Watson's failure to emerge. Gleason further stated that he planned, once rigor mortis had passed, to dispose of the body in the garbage that was circulated to pick up food trays. Gleason was unsuccessful in disposing of the body before Watson was discovered by prison personnel.

Throughout the circuit court proceedings, Gleason consistently repeated that he had no remorse. Rather, knowing that the premeditated murder of an inmate and more than one murder within a three-year period was punishable by the death penalty in Virginia, he commented to the court that he "already

2

had a few [other] inmates lined up, just in case I didn't get the death penalty, that I was gonna take out."

Following Watson's death, Gleason had been moved to solitary confinement in Virginia's "supermax" Red Onion Prison. On July 28, 2010, Gleason was in a solitary recreation pen that shared a common wire fence with that of Aaron Cooper. Gleason asked Cooper to try on a "religious necklace" that Gleason was making. Gleason proceeded to strangle Cooper through the wire fence, repeatedly choking Cooper "'til he turned purple," waiting "until his color came back, then [going] back again" until Cooper finally expired. Gleason described himself laughing at the reaction of the other inmates. He then watched and mocked the prison staff attempting to revive Cooper.

Gleason was charged in the capital murder of Cooper under Code § 18.2-31(8) for "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period." On April 22, 2011, Gleason pled guilty to the murder of Cooper. He informed the court that he had deliberately targeted Cooper so as to make a point to the prosecutor and as a favor to another inmate who was to be released soon, so that the inmate would owe Gleason, and Gleason would then have someone outside the prison to do his bidding.

After accepting both guilty pleas, the court conducted a multi-day joint sentencing proceeding, considering evidence and argument by counsel and Gleason.  The court also reviewed a pre-sentence report, Gleason having waived a post-sentence report.  The court fixed Gleason's sentences at death, finding the aggravating factors of both vileness and future dangerousness in both cases beyond a reasonable doubt, and concluding that these factors were not outweighed by mitigating facts.  Although Gleason was found competent to waive appeal and did so, we must proceed with the required statutory review.

## II.  Statutory Review

### A.  Passion, Prejudice, or Other Arbitrary Factors

We first consider whether the death sentences were imposed "under the influence of passion, prejudice or any other arbitrary factor."  Code § 17.1-313(C)(1).

We find no evidence to suggest that this was the case. Counsel for Gleason have conceded that they cannot point to any evidence in the record that would indicate that the circuit court was influenced by passion, prejudice, or any other arbitrary factor.  The circuit court, hearing the case without a jury, was meticulous in ensuring that Gleason was competent, and the record makes clear that Gleason consistently had advice from stand-by counsel throughout the proceedings.  The court took great pains to explain to Gleason the procedure, the law,

4

and his rights. Gleason was permitted to change his plea in the Watson case from not guilty to guilty to not guilty, and back again to guilty. The court granted each of Gleason's requests for a continuance, appointed every expert he requested, and granted all accommodations within its power to grant.

The circuit court also explicitly stated that, while Gleason had asked the court to consider a variety of reasons why Gleason should be sentenced to death on either or both charges, "the only things that I am allowed to consider and the only things that I have considered throughout this case, regardless of what testimony has been offered or regardless of what opinions have been given, are the statutory factors that a fact-finder in Virginia [may] appropriate[ly] consider": whether the Commonwealth has proved vileness or future dangerousness in either of the two cases beyond a reasonable doubt, as well as whether mitigating facts outweigh these proofs.

Gleason points to no portion of the record that suggests that the sentences were issued as a result of passion or prejudice, or that they were arbitrary in any way. Our review of the record likewise has revealed no such bias.

B.  Proportionality Review

The statutory mandate against excessive or disproportionate sentencing in Code § 17.1-313(C) is not to " '[e]nsure complete symmetry among all death penalty cases,' " but rather " 'to determine if a sentence of death is aberrant.' "  Prieto v. Commonwealth, 283 Va. 149, 188-89, 721 S.E.2d 484, 507-08 (2012) (alteration in original) (quoting Porter v. Commonwealth, 276 Va. 203, 267, 661 S.E.2d 415, 448 (2008), cert. denied, 556 U.S. 1189 (2009)).

The two crimes share several features relevant to our review.  The murders were both clearly premeditated and accomplished by means of ligature strangulation, a very deliberate and personal method of killing.  They both involved taunting or torture indicative of a particularly high level of cruelty:  Watson was tied up, beaten, taunted, given his last cigarette and then had a urine sponge stuffed in his face, while Cooper was repeatedly strangled and permitted to catch his breath before he was killed.

We are required by Code § 17.1-313(C) to consider not only the crime itself but the defendant.  In both instances, Gleason was dispassionate after the killing:  Watson's body remained in his cell with him for fifteen hours as he plotted attempts to hide the body, and Gleason mocked officers attempting to revive Cooper.  Gleason was very clear to the court that he had "no

remorse for it, zero." Gleason presented witnesses testifying to the fact that, even from prison, he was a danger to both the prison population and the population at large. He has shown from his actions that he is capable of orchestrating a murder in Virginia's most secure prison. He himself stated to the court: "You guys can lock me 24/7, take everything out of my cell . . . . Sooner or later, I'm gonna be the nice little man, and get out there" and kill again.

In the course of this review, we have considered similar cases for which a death sentence was imposed involving capital murders committed by inmates. See, e.g., Remington v. Commonwealth, 262 Va. 333, 551 S.E.2d 620 (2001), cert. denied, 535 U.S. 1062 (2002), Lenz v. Commonwealth, 261 Va. 451, 544 S.E.2d 299, cert. denied, 534 U.S. 1003 (2001), Payne v. Commonwealth, 233 Va. 460, 357 S.E.2d 500, cert. denied, 484 U.S. 933 (1987). We have also considered similar cases for which a death sentence was imposed for more than one murder within three years. See, e.g., Andrews v. Commonwealth, 280 Va. 231, 699 S.E.2d 237 (2010), cert. denied, ___ U.S. ___, 131 S.Ct. 2999 (2011) (death penalty vacated on other grounds by our Court); Muhammad v. Commonwealth, 269 Va. 451, 619 S.E.2d 16 (2005), cert. denied, 547 U.S. 1136 (2006); Walker v. Commonwealth, 258 Va. 54, 515 S.E.2d 565 (1999), cert. denied, 528 U.S. 1125 (2000). We have additionally reviewed similar

7

cases in which, after a finding of both aggravating factors of future dangerousness and vileness, a death sentence was imposed for a willful, deliberate, and premeditated killing by means of ligature strangulation. See, e.g., Bramblett v. Commonwealth, 257 Va. 263, 513 S.E.2d 400, cert. denied, 528 U.S. 952 (1999); Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609 (1989), cert. denied, 498 U.S. 908 (1990); Spencer v. Commonwealth, 238 Va. 563, 385 S.E.2d 850 (1989), cert. denied, 493 U.S. 1093 (1990); Spencer v. Commonwealth, 238 Va. 295, 384 S.E.2d 785 (1989), cert. denied, 493 U.S. 1093 (1990); Spencer v. Commonwealth, 238 Va. 275, 384 S.E.2d 775 (1989), cert. denied, 493 U.S. 1036 (1990); Clanton v. Commonwealth, 223 Va. 41, 286 S.E.2d 172 (1982). Finally, we have reviewed capital murder cases in which life imprisonment was imposed rather than the death penalty. After reviewing these cases and Gleason's actions as admitted to under oath before the circuit court, we are convinced that Gleason's death sentences are neither excessive nor disproportionate.

## III. Conclusion

In sum, we determine that the death sentences were not imposed under the influence of passion, prejudice, or any other arbitrary factor and are not excessive or disproportionate. Accordingly, we will affirm the judgments of the circuit court.

Record No. 111956 – Affirmed.
Record No. 111957 – Affirmed.

8